IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAVID HONZU, | CASE NO. 4:24-CV-01754-BMB |
| Petitioner, | JUDGE BRIDGET M. BRENNAN |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN GEORGE FREDRICK, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

## INTRODUCTION

Representing himself, Petitioner David Honzu, a prisoner in state custody, seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction under § 2254(a) and the matter is referred to me to prepare a Report and Recommendation. (Non-document entry of Dec. 10, 2024). Respondent George Fredrick, as Warden of the Marion Correctional Institution (hereinafter, the State), filed the Return of Writ with the state court record. (ECF #13). Mr. Honzu filed a Traverse. (ECF #14). He also supplemented his petition with a letter arguing inconsistencies at trial prove he was wrongfully convicted. (ECF #19).

Mr. Honzu asserts four grounds for relief challenging his convictions for attempted kidnapping and tampering with evidence in Case No. 2022 CR 469 (Case No. 469) and for kidnapping and rape in Case No. 2022 CR 561 (Case No. 561). For the reasons below, I recommend the District Court **DISMISS** a portion of Ground One and Ground Four as procedurally defaulted, **DENY** the remaining grounds for relief as meritless and **DENY** Mr. Honzu a certificate of appealability (COA) on all grounds.

1

PROCEDURAL HISTORY

**A.      State Court Factual Findings**

The Ohio Court of Appeals, Eleventh Appellate District, set forth the facts here. These factual findings are presumed correct unless Mr. Honzu rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). In Case No. 469, the Eleventh District determined:

> {¶1} On a late summer evening in early July 2022, an assailant attempted to kidnap a young woman at a self-service car wash in Champion, Ohio. Due to her quick escape, efficient police work, and modern technology, the appellant, David Honzu ("Mr. Honzu"), was apprehended a mere few hours later, still driving around in his vehicle, naked from the waist-down and intoxicated.

> {¶2} Mr. Honzu appeals from the judgment entry of the Trumbull County Court of Common Pleas, which after a bench trial, sentenced him on two merged counts of the lesser included offense of attempted kidnapping with sexual motivation, sexually violent predator ("SVP"), and repeat violent offender ("RVO") specifications, and on one count of tampering with evidence, for an aggregate term of imprisonment of a minimum of 17 years up to a maximum of life.

> {¶3} Mr. Honzu raises two assignments of error on appeal, contending (1) the state failed to prove attempted kidnapping pursuant to R.C. 2923.02(A) and 2905.01(A)(4) because there was insufficient evidence to prove he attempted to restrain the liberty of the victim with a purpose to engage in sexual activity; and (2) he was deprived of the effective assistance of counsel because his trial counsel failed to file motions to suppress the evidence seized from searches of his vehicle and cell phone, and the cumulative pre-trial and trial errors of defense counsel deprived him of a fair trial. These cumulative errors include failing to challenge search warrants, which lacked probable cause, failing to object to the state's leading questions of two witnesses, and defense counsels' objection to the state's offer of two of his prior convictions.

> {¶4} After a thorough review of the record and pertinent law, we find Mr. Honzu's assignments of error to be without merit. Firstly, Mr. Honzu argues the trial court erred in overruling his Crim.R. 29 motion on counts one and three (kidnapping) because he was convicted of the lesser included offense of attempted kidnapping. A conviction on a lesser included offense, however, does not equate to a determination that the trial court erred in failing to grant a Crim.R. 29 sufficiency motion as to that offense. A trier of fact does not have to find a defendant not guilty of an offense before considering a lesser included offense. Thus, we review Mr. Honzu's sufficiency

2

of the evidence argument on the lesser included offense of which he was convicted, *i.e.*, attempted kidnapping.

{¶5} A review of the evidence the state introduced at trial reveals the state introduced more than sufficient evidence that Mr. Honzu attempted to restrain the victim through the victim's testimony, her police statement, and surveillance videos from the car wash.

The state also introduced sufficient evidence that Mr. Honzu attempted to restrain the liberty of the victim for the purpose of nonconsensual sexual activity from data reports of Mr. Honzu's cell phone, which revealed his route throughout the evening, bank transactions, and search history. This evidence revealed Mr. Honzu visited three car washes in five hours while watching pornographic videos, including in the minutes prior to the incident.

{¶6} Secondly, since there was no reasonable probability the motions to suppress the inventory search of his vehicle and the subsequent searches of his vehicle and cell phone would have been granted, we conclude Mr. Honzu's trial counsel were not ineffective for failing to file motions to suppress on those grounds. There was some testimony as to standard police procedure for inventory searches, and the items seized in the inventory search were illegal contraband and in plain view. Further, the search warrants were not facially defective and described with particularity the places to be searched and items to be seized. Lastly, none of Mr. Honzu's remaining claims of ineffective assistance of counsel have merit since he failed to allege any prejudice resulting therefrom. Cumulative error cannot be established by simply joining meritless claims together.

{¶7} The judgment of the Trumbull County Court of Common Pleas is affirmed.

. . .

Bench Trial

{¶9} The case proceeded to a bench trial at which the state presented the testimony of L.B., the victim; Joseph Gillis ("Mr. Gillis"), the owner of the car wash; Officers Brian Mackey and Joshua Rudesill of the Champion Police Department; Deputies John Hughes ("Dep. Hughes"), Ron Carr ("Dep. Carr"), and Russ Molinato of the Trumbull County Sheriff's Office; and Detectives Eric Laproccina and Michael Altiere ("Det. Altiere") of the Warren Police Department. The state also presented surveillance videos, photographs, and screenshots of Mr. Honzu and his vehicle from the car wash; items procured in the search of his vehicle; cell phone data reports; and certified copies of his prior convictions.

{¶10} L.B., who was 20 years old at the time, testified that on July 3, 2022, at around 9:30-10:00 p.m., she stopped at Bud's Car Wash in Champion Township, Ohio. She first noticed Mr. Honzu because he was parked next to her in the vacuum area, sitting

in his passenger seat. She was inside her car, hanging an air freshener on the mirror when Mr. Honzu opened her driver's side door, confronted her with a knife, and told her not to say anything or he would kill her. He then told her, "move over bitch." Initially, L.B. froze, but she then moved to the passenger side, opened the door, and ran. Mr. Honzu grabbed her clothing and ripped it in the process of trying to stop her. She managed to escape, and, noticing a car, she ran toward it, asking for help. The occupants assisted her and called the police, who took her statement of the incident.

{¶11} The car wash owner, Mr. Gillis, obtained video footage of the incident from his surveillance system and credit card transactions from that time period. This enabled the police to identify Mr. Honzu as the assailant, his vehicle, a copper-colored Buick SUV, and his address.

{¶12} At approximately 1:30 a.m., L.B. went to the police station upon request and identified Mr. Honzu in a photo lineup. Dep. Carr parked outside Mr. Honzu's home after confirming he was not there. After approximately 30 minutes, he observed Mr. Honzu's vehicle approaching and activated his lights, initiating a traffic stop. Dep. Hughes arrived to assist. Mr. Honzu appeared to stop but then continued driving. Both deputies saw Mr. Honzu bite something and attempt to throw an object out of the closed passenger side window, where it shattered against the glass. The deputies blocked Mr. Honzu's vehicle, forcing him to stop. Mr. Honzu refused to comply with the deputies' orders to get out of the vehicle. When he finally did so, he was barefoot and naked from the waist down with glassy eyes and a white substance in and around his mouth. He appeared intoxicated, and he struggled to put his shorts on, putting both legs through one pant hole.

{¶13} The police conducted an inventory search and in the process found, in plain view, pieces of crack-cocaine, parts of a Chore Boy brillo sponge, and pieces of a pipe. Mr. Honzu was arrested, and the vehicle was towed. Later, the police procured two search warrants for the vehicle and Mr. Honzu's cell phone. Inside the vehicle the deputies found a chaotic scene of various items, including a bottle of lotion in the center console, crumpled napkins, disposable surgery gloves, a tarp, a welding mask, cleaning supplies, a pair of men's underwear, a pair of men's shoes, and a pocketknife. The hatch/trunk area of the vehicle was completely clean.

{¶14} Data reports from Mr. Honzu's cell phone revealed he drove to two other car washes and accessed numerous pornography sites that evening, including immediately prior to the incident.

(ECF #13-1 at PageID 250-55; *see also State v. Honzu*, No. 2022-T-0122, 2023 WL 5202403, at *1-3

(Ohio Ct. App. Aug. 14, 2023) (*Honzu I*)).

In Case No. 561, the Eleventh District determined the following:

4

{¶1} In 2011, the Ohio Attorney General's Office started the Sexual Assault Initiative (the "SAK Initiative") to test a backlog of previously untested rape kits that were languishing in various police departments and sheriff's offices around the state of Ohio. One of those rape kits, collected in 2007, was from an unsolved incident involving an unidentified assailant who kidnapped and brutally beat and raped a female victim in Warren, Ohio. As part of the SAK Initiative, the rape kit was tested. The result led to a DNA match in CODIS ("Combined DNA Index System") and identified appellant, David Honzu ("Mr. Honzu"), as the assailant, prompting the underlying case.

{¶2} Mr. Honzu appeals from the judgment entry of the Trumbull County Court of Common Pleas, which after a jury trial, with the specifications bifurcated and tried to the bench, sentenced him on three counts of kidnapping with sexual motivation, sexually violent predator ("SVP"), and repeat violent offender ("RVO") specifications, and two counts of rape, with SVP and RVO specifications.

. . .

**Trial**

{¶9} In December 2022, a jury trial was held in which the state presented testimony from the victim, several detectives, a sergeant, deputies from the Warren Police Department and the Trumbull County Sheriff's Office, a SANE nurse ("sexual assault nurse examiner"), and an Ohio Bureau of Criminal Investigation forensic biology and DNA analyst. The state also admitted into evidence the SANE report/medical records, the rape kit and its contents, the victim's clothing, buccal swabs, DNA reports, and a photo of Mr. Honzu from 2007.

{¶10} The testimony and evidence presented at trial reflected that on July 29, 2007, in the early morning hours, Mr. Honzu followed and attacked the victim, A.E., brutally raping and beating her. Approximately nine years later, in 2018, a Trumbull County prosecutor called her, informing her they had made a match of the perpetrator from the rape kit she was administered in 2007. The various officers from the Trumbull County Sheriff's Office and the Warren Police Department led the jury through the SAK initiative that prompted the testing of the rape kit, the CODIS hit revealing a DNA match of Mr. Honzu, a confirmation of Mr. Honzu's DNA, and his eventual arrest.

**Bifurcation of Trial – Findings on Specifications**

{¶11} At the end of the first day of trial, the court held the specification hearing outside the presence of the jury. The state called Deputy Russ Molinatto ("Dep. Molinatto") from the Trumbull County Sheriff's Office, Department of Sex Offender Registration and Notification.

5

{¶12} Dep. Molinatto, Mr. Honzu's sex offender registration supervisor, identified Mr. Honzu, who has been registering as a sex offender for approximately 15-16 years. Dep. Molinatto elaborated on Mr. Honzu's prior convictions, which included rape of a 6-year old boy in Trumbull County in 1995; menacing by stalking with a sexual motivation of a 12-year old girl in Mahoning County in 2010; attempted abduction of a female jogger on a bike trail in Trumbull County in 2015; and attempted kidnapping with sexual motivation, SVP, and RVO specifications of a female at a car wash in Trumbull County in 2022.

{¶13} At the close of the hearing, the trial court reviewed, "[a]s to the factual findings to the repeat violent offender and repeat sexual offender, those verdict forms will be for the Court to sign, if the finding is made, and those will not be given to the jury."

{¶14} The following day, the trial concluded with the jury returning a verdict of guilty on all counts, including the sexual motivation specifications attached to the three kidnapping counts. After the jury was dismissed, the court found Mr. Honzu "is a sexually violent predator" and "is a repeat violent offender" on each individual count. The verdict forms for each specification count had a line for the court to make a finding that Mr. Honzu "is" or "is not" a RVO or SVP.

(*Id.* at PageID 360-64; *see also State v. Honzu*, Case No. 2023-T-0006, 2023 WL 5202405, at *1-2

(Ohio Ct. App. Aug. 14, 2023) (*Honzu II*)).

**B.    State Trial Case No. 469**

In July 2022, a Trumbull County, Ohio grand jury indicted Mr. Honzu on three counts of

kidnapping, with sexual-motivation (SM), sexually-violent-predator (SVP), and repeat-violent-

offender (RVO) specifications (Counts One through Three); aggravated robbery with SVP and

RVO specifications (Count Four); and tampering with evidence (Count Five). (ECF #13-1 at

PageID 88-92). Represented by two attorneys, Mr. Honzu waived trial by jury and proceeded to

bench trial. (*Id.* at PageID 101). At the close of the State's case, defense counsel moved for

dismissal of all counts under Rule 29 the Ohio Rules of Criminal Procedure, which was denied as

to Counts One, Three, and Five but granted as to Counts Two and Four. (ECF #13-2 at

PageID 972, 977-84). The defense rested without presenting evidence and renewed the Rule 29 motion. (*Id.* at PageID 991).

The trial court convicted Mr. Honzu of two counts of attempted kidnapping, lesser-included offenses for those charged in Counts One and Three. (ECF #13-1 at PageID 112). The court determined he committed the offenses with a sexual motivation, and that he is a sexually violent predator and repeat violent offender. (*Id.*). The court also convicted him of tampering with evidence (Count Five). (*Id.*). At sentencing on December 15, 2022, the trial court determined Counts One and Three and their attendant specifications merge for sentencing and the State chose to proceed on Count One. (*Id.* at PageID 115). The trial court imposed an aggregate sentence of 17 years to life in prison. (*Id.*).

## C.    Direct Appeal of Case No. 469

Mr. Honzu timely appealed his convictions and sentence to the Eleventh District. (ECF #13-1 at PageID 118). Through new counsel, he raised two assignments of error. First, he claimed the trial court erred when it denied his Rule 29 motion on Counts One and Three, arguing the State did not present sufficient evidence to prove beyond a reasonable doubt the essential elements of the kidnapping charges, specifically "restraint of liberty" and "purpose to engage in sexual activity." (*Id.* at PageID 140-45). Second, he claimed he was deprived of effective assistance of counsel because trial counsel did not raise Fourth Amendment challenges to the inventory search and warrant-based searches of his vehicle and cell phone. (*Id.* at PageID 146-61). On August 14, 2023, the Eleventh District concluded Mr. Honzu's claims were meritless and affirmed the trial

court's judgment. (*See id.* at PageID 250-70; *see also Honzu I,* 2023 WL 5202403). Mr. Honzu did

not appeal to the Supreme Court of Ohio.

### D. State Trial Case No. 561

When the grand jury issued the indictment in Case No. 469, it also issued a secret

indictment charging Mr. Honzu with other offenses dating back to July 2007. (ECF #13-1 at

PageID 271). In the secret indictment, he was charged with three counts of kidnapping (each with

SM, SVP, and RVO specifications) and two counts of rape (each with SVP and RVO

specifications). (*Id.* at PageID 271-76). Through the same counsel in Case No. 469, Mr. Honzu

moved to bifurcate the specifications from the underlying offenses and try the specifications to the

bench. (*Id.* at PageID 297-98). The trial court granted the motion in part, separating the SVP and

RVO specifications from all underlying charges, and denied the motion in part, finding that the

SM specifications must be tried to a jury. (*Id.* at PageID 301-03). During a break in the jury trial,

the court heard evidence relevant to the SVP and RVO specifications. (ECF #13-3 at PageID

1380-91). According to the trial transcript, the jury found Mr. Honzu guilty on all counts and

guilty on the SM specifications attached to the three kidnapping offenses. (*Id.* at PageID 1475-77).

Then the trial court found Mr. Honzu guilty of the SVP and RVO specifications. (*Id.* at PageID

1479-80). The judgment and sentencing entries, on the other hand, state that the jury found Mr.

Honzu guilty of the RVO specifications attached to all the underlying offenses. (ECF #13-1 at

PageID 304-07). At the sentencing hearing on January 10, 2023, the trial court determined Counts

One, Two, and Three and their attendant specifications merge for sentencing and the State chose

to proceed on Count One. (*Id.* at PageID 308). The trial court imposed an aggregate sentence of 60 years to life in prison. (*Id.* at PageID 309).

**E.    Direct Appeal of Case No. 561**

On January 13, 2023, Mr. Honzu appealed his convictions and sentence to the Eleventh District. (ECF #13-1 at PageID 311). Through new counsel, Mr. Honzu raised a single assignment of error, claiming the trial judge erred by sentencing Mr. Honzu to prison terms on the SVP and RVO specifications despite the absence of guilty verdicts for those specifications. (*Id.* at PageID 330-34). In August 2023, the Eleventh District concluded the trial court held a hearing on the bifurcated SVP and RVO specifications and found Mr. Honzu guilty. (*Id.* at PageID 361; *see also Honzu II,* 2023 WL 5202405, at *5). The Eleventh District then affirmed the trial court's judgment but remanded the case for the limited purpose of issuing a nunc pro tunc entry "to correct the manner of conviction on the RVO specifications." (ECF #13-1 at PageID 370; *see also Honzu II,* 2023 WL 5202405, at *5). On remand, the trial court issued a nunc pro tunc order reflecting that the jury found Mr. Honzu guilty of the underlying offenses and SM specifications while the court found Mr. Honzu guilty of the SVP and RVO specifications. (*Id.* at PageID 372-76). Mr. Honzu did not appeal to the Supreme Court of Ohio.

**F.    Application to Reopen Direct Appeals**

On November 6, 2023, Mr. Honzu, representing himself, moved to reopen his direct appeals in both cases under Rule 26(B) of the Ohio Rules of Appellate Procedure. (ECF #13-1 at PageID 377-81). For Case No. 469, Mr. Honzu claimed his appellate counsel was ineffective for not raising Fourth Amendment challenges to the inventory search of his vehicle and the probable cause for searching his cell phone. (*Id.* at PageID 379). For Case No. 561, Mr. Honzu claimed

appellate counsel was ineffective for not arguing the trial court improperly instructed the jury on the sexual motivation element of the kidnapping offenses. (*Id.* at PageID 380). On December 21, 2023, the Eleventh District issued judgment entries in each case rejecting Mr. Honzu's claims. (*Id.* at PageID 398-403). Mr. Honzu appealed to the Supreme Court of Ohio, but the Court declined to hear his appeal. (*Id.* at PageID 404-12, 433).

**G.  Petition for Postconviction Relief in Case No. 469**

After the Eleventh District denied his application to reopen, Mr. Honzu petitioned the trial court to vacate or set aside the judgment of conviction or sentence in Case No. 469, claiming trial counsel was ineffective because they did not pursue a motion to suppress evidence collected from his cell phone. (ECF #13-1 at PageID 434-39). He argued that suppression of the cell phone evidence would have changed the outcome at trial and, therefore, he was denied his constitutional right to effective assistance of counsel. (*Id.* at PageID 438). On March 15, 2024, the trial court denied the motion because Mr. Honzu did not provide "any affidavits or evidence containing sufficient operative facts" to prove trial counsel's alleged incompetence or demonstrate prejudice beyond "broad assertions and conclusory allegations," and because the appellate court reviewed similar claims in his Appellate Rule 26(B) application and denied them as meritless. (*Id.* at PageID 464-65).

Mr. Honzu appealed the decision to the Eleventh District, asserting he was entitled to a hearing on his petition for postconviction relief because he "proved with evidence de hors the record that trial counsel was ineffective at trial." (*Id.* at PageID 467, 487). The Eleventh District affirmed the denial of postconviction relief because Mr. Honzu did not "proffer evidence outside the record that if true would show that his trial counsel was ineffective." (*Id.* at PageID 515; *see also*

*State v. Honzu,* No. 2024-T-0054, 2024 WL 4814874, at *4 (Ohio Ct. App. Nov. 18, 2024)

(*Honzu III*)).

On appeal to the Supreme Court of Ohio, Mr. Honzu again claimed trial counsel was

ineffective for not challenging the search of his cell phone. (*Id.* at PageID 524-25). The Supreme

Court of Ohio declined to hear Mr. Honzu's appeal. (*Id.* at PageID 553; *see also State v. Honzu,*

250 N.E.3d 125 (Ohio 2025) (table)).

**H.     Petition for Postconviction Relief in Case No. 561**

Mr. Honzu also petitioned the trial court to vacate or set aside the judgment of conviction

or sentence in Case No. 561, claiming trial counsel was ineffective because he did not investigate

potential defenses, preserve crucial evidence, or impeach the victim with inconsistencies between

statements she made to police and her testimony at trial. (ECF #13-1 at PageID 554-58). The trial

court first determined the claim was barred by res judicata because the claim could have been

decided solely on evidence in the trial record, thus Mr. Honzu could have raised it on direct

appeal. (*Id.* at PageID 599). The trial court also found Mr. Honzu had not met his burden to

produce evidence showing trial counsel was ineffective and denied the motion. (*Id.*).

On appeal, the Eleventh District affirmed the trial court's judgment, finding no error with

dismissal of the claim as barred by res judicata, nor with finding that Mr. Honzu did not support

his claim with evidence not in the trial record. (*Id.* at PageID 638, 641; *see also State v. Honzu,*

No. 2024-T-0040, 2024 WL 4664826, at *4-5 (Ohio Ct. App. Nov. 4, 2024) (*Honzu IV*)). The

Supreme Court of Ohio declined to hear Mr. Honzu's appeal. (*See id.* at PageID 683; *see also*

*Honzu,* 250 N.E.3d 125 (Ohio 2025) (table)).

### FEDERAL HABEAS PETITION

Mr. Honzu raises four grounds for habeas relief:

**GROUND ONE:** Petitioner received ineffective assistance of trial counsel per the Sixth Amendment of the U.S. Constitution in 2022 CR 561 and 2022 CR 469.

**Supporting facts:** Counsel in 2022 CR 561 failed to investigate the discovery material to cross examine the alleged victim whose initial statements were contradicted by her trial testimony. Counsel also failed to subpoena the investigator who said this case should not be reopened. Counsel in 2022 CR 469 failed to challenge the illegal and unconstitutional search of petitioner's cellphone based on the Sheriff's affidavit that had no link between the cellphone and any crime. Therefore, based on the above facts, petitioner received ineffective assistance of trial counsel.

**GROUND TWO:** Petitioner received ineffective assistance of appellate counsel per the Sixth Amendment of the U.S. Constitution in 2022-T-0122 [Case No. 469] and 2023-T-0006 [Case No. 561].

**Supporting facts:** Appellate counsel in 2022-T-0122 failed to effectively argue that petitioner's right to be free from illegal search and seizure under the Fourth Amendment should have suppressed the illegally obtained cellphone evidence in which the exclusionary rule should have suppressed the search. Appellate counsel in 2023-T-0006 did not argue that the trial judge did not properly instruct the jury on an essential element of the crime of kidnapping in this case, sexually motivated, so petitioner's due process rights under the Fourteenth Amendment were violated as the jury was not given all elements of the crime to deliberate upon, so the crime was unproven.

**GROUND THREE:** Petitioner was denied his rights to due process and equal protection of the law per the Fifth Amendment when he was convicted against the sufficiency of the evidence of 2 counts of attempted kidnapping in Case 2022 CR 469.

**Supporting facts:** The trial judge dismissed Count 2 as insufficient to prove kidnapping's element of "removing another from the place where the other person is found." But the judge still found petitioner guilty of attempted kidnapping with a sexual motivation in this case. The State has the theory that going to a carwash and making ATM withdrawals is a sexual motivation. There is no evidence here.

**GROUND FOUR:** Petitioner was denied his Fifth Amendment due process and equal protection rights when judge sentenced him to SVP and RVP specifications without a finding of guilty.

> **Supporting facts:** The trial judge in 2022 CR 561 sentenced petitioner to SVP and RVO specifications all without guilty verdicts on these specifications. Petitioner's rights to due process and equal protection of the law under the Fifth Amendment of the United States Constitution were violated when he was sentenced for these specifications without guilty verdicts to justify these sentences. The only remedy to correct this void sentence is to remand the petitioner back to the trial court for a new sentencing hearing.

(ECF #1 at PageID 5-10) (cleaned up).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Honzu's habeas petition. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" so AEDPA acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). Habeas courts review the last-explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted).

Accordingly, habeas relief cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

For the purposes of § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court's decision is "contrary" to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* at 405. The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Id.* A state court does not act contrary to Supreme Court precedent when the precedent of the Supreme Court is ambiguous or nonexistent. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court's decision involves an "unreasonable application" of Supreme Court precedent if (1) the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case or (2) the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. A state-court decision must be "objectively unreasonable" to have unreasonably applied Supreme Court precedent which requires more than the decision being "erroneous" or "incorrect." *See id.* at 409-11. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

14

Under § 2254(d)(2), a state court's factual determinations stand unless they too are objectively unreasonable in light of the evidence presented in state court. *See Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct" unless the petitioner offers clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2554(e)(1).

Comity principles also require federal courts to defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including the statute of limitations, exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal habeas review is limited to federal claims that a state court decided on the merits. Claims that were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not reviewable by a federal habeas court. *See Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**Procedural default.** A federal habeas court may not review claims that have been procedurally defaulted under state law. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). There are two avenues by which a petitioner may procedurally default a claim. *Williams*, 460 F.3d at 806. One way a procedural default occurs is if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether that failure bars review of a habeas claim, courts in the Sixth Circuit ask four questions: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to meet that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can bar review of the federal constitutional claim; and (4) whether the petitioner can show cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

The other way a claim can be procedurally defaulted is if a petitioner does not raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). To have a habeas claim considered on the merits, a petitioner must present that federal claim at "each and every level" of the state courts. *See Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003). If a petitioner did not first raise his federal habeas claim before the state courts and state law would no longer allow the petitioner to raise the claim in state court, the claim is procedurally defaulted. *Williams*, 460 F.3d at 806.

**Excusing procedural default.** A procedural default may not be the end of a habeas claim. A petitioner can overcome a procedural bar by showing either (1) cause for the default and actual prejudice because of the alleged violation of federal law or (2) not considering the claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749. Success here does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim (subject to the standard of review above) when the claim would otherwise be procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor any ignorance of the law and procedural filing requirements are enough to show cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To show prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice. *Murray*, 477 U.S. at 494. Rather, the petitioner must show the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Id.* There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

**Miscarriage of justice exception.** Alternatively, a petitioner may overcome a procedural bar through a convincing claim of actual innocence. In *Coleman v. Thompson*, the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

501 U.S. at 750. A fundamental miscarriage of justice occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.* at 748. Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). As the Sixth Circuit recently summarized,

> This means that a petitioner may not pass through the equitable gateway by simply undermining the state's case. Rather, he must demonstrate that he *factually* did not commit the crime. Of course, dismantling the state's case is *relevant* and *helpful* to the petitioner because it leaves a vacuum to be filled by an exonerative explanation; but it is not sufficient in and of itself.

*Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024) (emphasis in original), *cert. denied*, 145 S.Ct. 1201 (2025).

To demonstrate actual innocence, the petitioner must show that in light of new reliable evidence, it is more likely than not that no reasonable juror would have found petitioner guilty

18

beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). When a petitioner presents new evidence the reviewing habeas court must assess the likely impact of that evidence on reasonable jurors in light of the evidence presented at trial. *Id.* at 331-332 ("the District Court must assess the probative force of the newly presented evidence in connection with the evidence of guilty adduced at trial").

ANALYSIS

In the Return of Writ, the State claims Mr. Honzu procedurally defaulted Grounds One, Three, and Four, and argues Ground Two is meritless. (ECF #13 at PageID 67-69, 75-79). In the Traverse, Mr. Honzu challenges the state courts' factual findings on direct appeal and argues he did not procedurally default his claims, or, in the alternative, that he has overcome the default. (ECF #14).

I begin with the issue of procedural default.

**A.  Procedural Default**

**1.  Ground One**

Ground One alleges ineffective assistance of trial counsel in two subclaims: (1) trial counsels' performance in Case No. 469 and (2) their performance in Case No. 561. The State contends the subclaim relating to Case No. 469 (failure to challenge the search of his cell phone) is procedurally defaulted because Mr. Honzu raised the claim on direct appeal to the Eleventh District but did not seek review in the Supreme Court of Ohio. (*Id.* at PageID 68).

Mr. Honzu asserts he sought direct review of the appellate decisions in *Honzu I* and *Honzu II*, but the Supreme Court of Ohio Clerk's office refused to file his notice of appeal because the office received it one day after the deadline to appeal expired. (*Id.* at 1500). Exhibits attached to the Traverse show Mr. Honzu provided his notice of appeal to the prison mail room on September

19

16, 2023, the clerk received the notice on September 29, 2023, and the clerk returned the documents without filing them because the deadline to appeal expired on September 28, 2023. (ECF #14-1, 14-2, 14-3, 14-4). Mr. Honzu argues his appeal was not late because he gave his documents to the prison mailroom before the deadline expired. (ECF #14 at PageID 1500). Alternatively, he asserts cause to overcome the procedural default, citing the "prison mailbox rule" and delays attributed to the institutional mail system and the U.S. Postal Service. (*Id.*).

In general, a notice of appeal to a federal district court's judgment or order is considered "filed" the day the clerk receives the notice, even if the clerk formally "files" the notice later. *Houston v. Lack,* 487 U.S. 266, 273 (1988) (citations omitted). The general rule recognizes that the typical civil appellant can choose to mail his notice and assume the risk of untimely delivery and filing, or he can personally deliver the notice to the court clerk. *Id.* at 275. The Supreme Court concluded the general rule should not apply to a pro se prisoner because he necessarily loses control over mailing of the notice once he hands it to the prison authorities, and he lacks the freedom to deliver the notice to the court clerk personally. *Id.* at 273-74. To remedy to issue, the Court announced the "prison mailbox rule," which provides that a pro se prisoner's notice of appeal in federal court is "filed" when the prisoner delivers the notice to prison authorities for mailing to the district court. *Id.* at 270.

The prison mailbox rule applies in the federal courts and is not binding on state courts, but "where a pro se prisoner attempts to deliver his [notice in state court] for mailing in sufficient time for it to arrive timely in the normal course of events, however, the rule is sufficient to excuse a procedural default based upon a late filing." *Maples v. Stegall,* 340 F.3d 433, 439 (6th Cir. 2003). In *Maples,* the Sixth Circuit held that if the prison mailed the prisoner's postconviction petition when

20

he delivered it to prison authorities—there, five days before the state's deadline—it would have been "timely delivered in the normal course of events." *Id.* The court then effectively assumed prejudice, holding that "[t]he prejudice resulting from the procedural default is that the [state supreme court] refused to consider Maples's claim of ineffective assistance of counsel." *Id.* The court concluded the petitioner established cause and prejudice to excuse the procedural default and assessed the merits of the claim. *Id.*

Other courts in the Sixth Circuit have determined a habeas petitioner establishes cause when the petitioner shows that he gave the intended filing to prison authorities no less than five days before the state-court deadline. *See Henderson v. Palmer,* 730 F.3d 554, 560 (6th Cir. 2013) (finding cause to excuse procedural default when the petitioner delivered his state-court petition to prison mail officials five days before the state-court filing deadline); *Mohn v. Bock,* 208 F.Supp.2d 796, 802 (E.D. Mich. July 5, 2002) (same); *Hines v. Brunsman,* No. 3:08-cv-2916, 2010 WL 750176, at *19 (N.D. Ohio Feb. 26, 2010) (finding petitioner established cause to excuse procedural default when the petitioner delivered his notice of appeal to the prison mailroom two weeks before the deadline). Similarly, other courts in the Sixth Circuit have followed *Maples,* finding prejudice where state inaction caused the untimely filing. *See, e.g., Henderson,* 730 F.3d at 560; *Hines,* 2010 WL 750176, at *19-20; *Bradley v. Turner,* No. 3:12-cv-1504, 2013 WL 1345667, at *18 (N.D. Ohio Feb. 11, 2013).

Here, Mr. Honzu attached a receipt showing he delivered his notice of appeal and memorandum in support to the prison mailroom on September 16, 2023, which was 13 days before the state supreme court's filing deadline. (ECF #14-1, 14-2, 14-3). He has also shown that the Supreme Court of Ohio refused to file the notice of appeal because it arrived just one day after

the deadline expired. (ECF #14-4). Adhering to *Maples,* I find this sufficient cause and prejudice to excuse the procedural default. Therefore, I will assess the first subclaim of Ground One on the merits.

The State also asserts Mr. Honzu procedurally defaulted the next subclaim relating to Case No. 561 (failure to investigate discovery materials, cross-examine the alleged victim on inconsistencies in her testimony, or subpoena an investigator) because he did not follow state procedural rules in presenting the claims to the appropriate state court. (ECF #13 at PageID 67-68). Mr. Honzu first raised these issues in a petition for postconviction relief in the trial court and pursued them through appeal to the Supreme Court of Ohio. (ECF #13-1 at PageID 556-58, 609-11, 651-52). The Eleventh District issued the last-reasoned judgment on the claim, stating:

> We find no error in the trial court's decision to dismiss Mr. Honzu's petition without an evidentiary hearing and in its finding that his claim of ineffective assistance of counsel is barred by the doctrine of res judicata and should have been raised on direct appeal. Mr. Honzu was required to proffer evidence outside the record that if true, would show that his trial counsel were ineffective. Mr. Honzu failed to file even a self-serving supporting affidavit, and the evidence he did attach, *i.e.,* discovery documents, were already part of the record at the time of his appeal (aside from his google search of the time of sunrise on the day of the incident).

(*Id.* at PageID 638).

Discussed above, courts use a four-pronged analysis to determine whether a petitioner's failure to comply with a state procedural rule bars review of habeas claims. *Maupin,* 785 F.2d at 138. Each prong supports a finding that Mr. Honzu procedurally defaulted this subclaim.

For the first prong, Ohio's doctrine of res judicata is a state procedural rule that prevents a defendant from bringing claims in a postconviction action that were, or could have been, raised on direct appeal. *See State v. Perry,* 226 N.E.2d 104, 108 (Ohio 1967). The Eleventh District held that res judicata applied because these claims could have been raised and litigated on direct appeal, but

22

Mr. Honzu did not do so and affirmed the denial of his postconviction petition on that basis. (ECF #13-1 at PageID 638; *see also Honzu IV*, 2024 WL 4664826, at \*4). This satisfies the first and second prongs: that there was a procedural rule that Mr. Honzu violated, and that the state court enforced the procedural rule.

The third prong is also satisfied because the Sixth Circuit has long held that Ohio's rule denying review of the merits in postconviction proceedings when a petitioner could have but did not raise a claim on direct appeal is an adequate and independent state-law ground foreclosing review in subsequent federal habeas proceedings. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (holding habeas claims first raised in post-conviction proceedings and barred by Ohio's doctrine of res judicata are procedurally defaulted).

For the fourth prong, Mr. Honzu provides no explanation in his Petition or Traverse as to why he could not raise these arguments in his direct appeal. When a federal habeas petitioner procedurally defaults a claim in the state courts, the petitioner must present affirmative evidence or argument about the precise cause and resulting prejudice. *Lundgren*, 440 F.3d at 764 (citations omitted). Mr. Honzu has not tried to meet that burden and therefore has not shown cause for his failure to follow the state procedural rule or resulting prejudice.

Mr. Honzu also claims he is actually innocent. (ECF #14 at PageID 1500). Discussed above, a petitioner's showing of actual innocence may allow a federal habeas court to disregard the procedural default and review the merits of claim. *See Coleman*, 501 U.S. at 750. But the petitioner's actual-innocence claim must be supported by new evidence for the reviewing court to examine and assess alongside the evidence presented at trial. *See Schlup*, 513 U.S. at 327. Mr. Honzu has not presented new evidence for review. By itself, this omission dictates the result: he

23

has not met the miscarriage of justice exception. *Id.* at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.").

To the extent Mr. Honzu presses a freestanding claim of innocence, he does not prevail. Habeas relief is not available for a petitioner's freestanding claim of innocence absent a separate constitutional violation in the petitioner's proceeding. Indeed, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). Based on this precedent, the Sixth Circuit has repeatedly held that actual innocence is not cognizable as a freestanding habeas claim, particularly in the context of non-capital proceedings. *See, e.g.*, *Hubbard*, 98 F.4th at 742 (holding the actual-innocence exception "is not a freestanding substantive claim for habeas relief"); *Sitto v. Lafler*, 279 F.App'x 381, 382 (6th Cir. 2008) ("[W]e continue to adhere to the rule that a free-standing innocence claim is not cognizable for habeas review.").

Because all four prongs support a finding that Mr. Honzu has procedurally defaulted the subclaim of Ground One relating to Case No. 561 and he has not advanced new evidence necessary for the actual-innocence exception, I recommend the District Court dismiss that subclaim as procedurally defaulted.

2.      **Ground Three**

The State claims Ground Three, in which Mr. Honzu alleges insufficient evidence supported his convictions for attempted kidnapping with a SM specification, is procedurally defaulted because Mr. Honzu did not appeal the Eleventh District's decision to the Supreme Court of Ohio. (ECF #13 at PageID 68). Mr. Honzu contends he raised this claim on direct appeal alongside the subclaim in Ground One concerning Case No. 469, discussed above. (*Id.* at PageID 133-34).

On direct appeal, Mr. Honzu argued there was insufficient evidence on two essential elements of kidnapping: "restraint of liberty" and "purpose to engage in sexual activity." (ECF #13-1 at PageID 176). Mr. Honzu did not argue in the state courts that there was insufficient evidence on which to find he committed the offense with a sexual motivation, a specification attached to the offense of kidnapping. He raised that issue for the first time on federal habeas review. Because he could have raised it in the state court on direct appeal, res judicata precludes him from raising that claim now in the state courts. *See Perry*, 226 N.E.2d at 108. Thus, like the claim in Ground One relating to Case No. 561, the portion of Mr. Honzu's claim concerning the SM specification is procedurally defaulted. *Williams*, 460 F.3d at 806 (holding that a claim is procedurally defaulted where the petitioner did not first raise it before the state courts and state law no longer allows the petitioner to raise the claim in state court). Thus, this portion of Ground Three is procedurally defaulted.

As to the elements of the attempted-kidnapping offenses, Mr. Honzu procedurally defaulted this claim by not timely appealing the Eleventh District's decision on the claim to the Supreme Court of Ohio. But like the claim in Ground One relating to Case No. 469, Mr. Honzu

attempted to raise his insufficient evidence claim on appeal to the Supreme Court of Ohio, with the clerk not accepting the filing because the clerk received it after the deadline to appeal expired. (ECF #14-4 at PageID 1500). Because Mr. Honzu established that he delivered his notice of appeal to the prison mailroom nearly two weeks before the filing deadline and the Supreme Court of Ohio did not review his claims, he has shown cause and prejudice sufficient to overcome the procedural default of this claim. I will review the sufficiency claims as to the elements of the attempted-kidnapping convictions on the merits.

### 3. Ground Four

In Ground Four, Mr. Honzu asserts he was never found guilty on the SVP and RVO specifications in Case No. 561, and therefore the trial court violated his Fifth Amendment rights to due process and equal protection when it imposed sentences for those specifications. (ECF #1 at PageID 10). The State claims Ground Four is procedurally defaulted because Mr. Honzu did not comply with the state's contemporaneous-objection rule, an adequate and independent state rule on which the state court may foreclose review of a claim. (ECF #13 at PageID 69). I agree with the State that Ground Four is procedurally defaulted.

For the first prong of the procedural-default analysis, Ohio employs a contemporaneous-objection rule that prohibits later review of a claim when no objection was made during trial proceedings absent a showing of cause and prejudice. *State v. Murphy,* 747 N.E.2d 765, 788-89 (Ohio 2001) ("The waiver rule requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review"). The rule applies to alleged sentencing errors to which the defendant did object at the sentencing hearing. *State v. Collins,* 41 N.E.3d 899 (Ohio Ct. App. Sept. 14, 2015); *State v. Lefkowitz,* No. 2021-T-0054, 2022 WL

16919824 (Ohio Ct. App. Nov. 14, 2022). Here, Mr. Honzu did not object when the trial court issued sentences for the SVP and RVO specifications, so the first prong is satisfied.

Second, Ohio courts enforce the contemporaneous-objection rule by analyzing a waived error under a plain-error standard of review. *See Murphy*, 747 N.E.2d at 789 (quoting Ohio Crim. R. 52(B)). The Eleventh District did exactly that for Ground Four. (ECF #13-1 at PageID 367; *Honzu II*, 2023 WL 5202405 at *4).

Third, the Sixth Circuit has repeatedly held Ohio's contemporaneous-objection rule is an independent and adequate state law ground to foreclose review. *See Hand v. Houk*, 871 F.3d 390, 417 (6th Cir. 2017).

Fourth, Mr. Honzu offers no explanation as to why he did not object to the alleged sentencing error at the time of sentencing. When a federal habeas petitioner procedurally defaults a claim in the state courts, the petitioner must present affirmative evidence or argument about the precise cause and resulting prejudice. *Lundgren*, 440 F.3d at 764 (citations omitted). Mr. Honzu has not tried to meet that burden and therefore has not shown cause for his failure to follow the state procedural rule or resulting prejudice.

In sum, Mr. Honzu has procedurally defaulted (1) the subclaim in Ground One alleging ineffective assistance of counsel in Case No. 561, (2) the portion of Ground Three challenging the sufficiency of the evidence supporting the SM specification, and (3) all of Ground Four. I recommend the District Court dismiss these claims as such.

I now turn to the merits of the claims that have not been procedurally defaulted.

**B.      Merits Review**

To obtain federal habeas relief, Mr. Honzu must show that the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

**1.      Ground One**

In the remaining subclaim of Ground One, Mr. Honzu alleges he was denied his Sixth Amendment right to effective assistance of counsel because trial counsel in Case No. 469 did not challenge the search of his cell phone on the basis that the search warrant affidavit did not establish probable cause. (ECF #1 at PageID 5).

Mr. Honzu's ineffective assistance claim is governed by the familiar two-part test in *Strickland v. Washington*, 486 U.S. 668 (1984). A violation of the right to the effective assistance of counsel is established where (1) an attorney's "performance was deficient" and (2) "the deficient performance prejudiced the defense." *Id.* at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

On judicial review, the court must decide "whether counsel's assistance was reasonable considering all the circumstances." *Id.* Judicial assessment of counsel's performance is "highly deferential," beginning with "a strong presumption that counsel's conduct falls within the wide

28

range of reasonable professional assistance." *Id.* The court must evaluate the challenged conduct from counsel's perspective and assess the reasonableness of that conduct "on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 689-90.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *See Harrington*, 562 U.S. at 105. First, *Strickland's* presumption that counsel rendered adequate assistance is, by itself, "a deferential standard that is challenging for a claimant to meet." *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017). When a state prisoner asks the federal court to grant the writ of habeas corpus because he received ineffective assistance of counsel, the reviewing court gives both the defense attorney and the state court the benefit of the doubt. *Titlow,* 571 U.S. at 15. Second, unreasonableness under *Strickland* is different from unreasonableness under § 2254(d). *Harrington*, 562 U.S. at 105. When § 2254(d) applies, the question is not whether counsel's actions were reasonable, but whether a reasonable argument exists that counsel satisfied *Strickland's* deferential standard. *Id.* And because the *Strickland* standard is a general one, the range of reasonable applications is substantial. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The Eleventh District addressed Mr. Honzu's ineffective assistance claim on direct appeal:

### Ineffective Assistance of Counsel

{¶46} In his second assignment of error, Mr. Honzu contends his trial counsel were ineffective because they failed to file motions to suppress the evidence collected from his vehicle and cell phone since the warrants were not supported by probable cause. He further argues the cumulative errors of counsel, which he lists in six numbered points, deprived him of a fair trial.

{¶47} "'In evaluating ineffective assistance of counsel claims, Ohio appellate courts apply the two-part test enunciated by the United States Supreme Court in *Strickland v. Washington*. First, it must be determined that counsel's performance fell below an objective standard of reasonableness. Second, it must be shown that prejudice

resulted. "Prejudice exists when 'the result of the trial would have been different' but for counsel's ineffectiveness.""""

{¶48} In applying the foregoing standard, a reviewing court indulges a strong presumption that counsel's conduct is within the wide range of reasonable professional representation. An attorney's arguably reasoned strategic or tactical decisions do not generally constitute ineffectiveness.

**Failure to File Motions to Suppress**

{¶49} Mr. Honzu contends he was deprived of the effective assistance of counsel because his trial counsel failed to file motions to suppress evidence seized from the inventory search of his vehicle at the time of arrest, as well as evidence from searches of his vehicle and cell phone because the warrants were not supported by probable cause.

{¶50} When an ineffective assistance claim is predicated upon the failure to submit a motion to suppress particular evidence, "an appellant must point to evidence in the record showing there was a reasonable probability the result of [the] trial would have differed if the motion had been filed or pursued." "'Hence, to establish prejudice, an appellant must prove more than a mere possibility that the motion could have been granted; rather, he or she must show a reasonable probability that, but for the omission, the result of the proceedings would have been different.'"

\* \* \*

**Search Warrants**

{¶56} Mr. Honzu similarly contends defense counsel were ineffective for failing to file motions to suppress the evidence seized from the searches of his vehicle and cell phone because the warrants lacked probable cause.

{¶57} "A warrant of search or seizure shall issue only upon probable cause, supported by oath or affirmation particularly describing the place to be searched and the property and things to be seized."

{¶58} Pursuant to R.C. 2933.23, "affidavit for search warrant," "[a] search warrant shall not be issued until there is filed with the judge or magistrate an affidavit that particularly describes the place to be searched, names or describes the person to be searched, and names or describes the property to be searched for and seized; that states substantially the offense in relation to the property and that the affiant believes and has good cause to believe that the property is concealed at the place or on the person; and that states the facts upon which the affiant's belief is based. The judge or magistrate may demand other and further evidence before issuing the warrant. If

the judge or magistrate is satisfied that grounds for the issuance of the warrant exist or that there is probable cause to believe that they exist, he shall issue the warrant, identifying in it the property and naming or describing the person or place to be searched."

{¶59} A review of the warrants and supporting affidavits reveal they are not facially defective and "particularly describe" the vehicle and cell phone to be searched and items/data to be seized. For instance, the warrant for Mr. Honzu's vehicle identifies the vehicle and the property to be searched and seized, which includes a non-exhaustive list of the items identified in the inventory search that were likely to be related to the crime of kidnapping. The affidavit by a Trumbull County Sheriff's Office detective sets forth the facts of the crime, including the knife Mr. Honzu used to threaten the victim, how Mr. Honzu was identified by the car wash surveillance system and credit card transactions, how Mr. Honzu was apprehended in the vehicle in a half-naked intoxicated state, what the inventory search revealed, Mr. Honzu's sex offender status, and the items sought to be search and seized.

{¶60} Likewise, the warrant for Mr. Honzu's cell phone identifies that the phone was located in Mr. Honzu's vehicle during the inventory search and that it was likely to contain location information/data and app-based data that was evidence of the crime of kidnapping. The affidavit by the same detective similarly set forth the facts of the crime and the data from the cell phone that was sought to be searched and seized.

{¶61} Based on our review, there is no reasonable probability the motions to suppress the searches of Mr. Honzu's vehicle and his cell phone would have been granted. Thus, defense counsel were not ineffective for failing to file motions to suppress on those grounds. *See State v. Benedict*, 2022-Ohio-3600, 198 N.E.3d 979, ¶ 47-53 (3d Dist.) (the appellant failed to establish ineffective assistance of counsel where search-warrant was not facially defective and affidavit sufficiently stated sufficient facts to identify what places law enforcement could search and what items to seize).

(ECF #13-1 at PageID 263-68; *Honzu I,* 2023 WL 5202403, at *7-9).

After review, I conclude Mr. Honzu is not entitled to federal habeas relief on this ineffective-assistance claim. The Supreme Court instructs that "where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986).

Mr. Honzu contends he would have prevailed on his Fourth Amendment claim that the search of his cell phone was illegal because the affidavit "simply stated that cell phones may contain evidence of a crime." (*See* ECF #1 at PageID 7; ECF #14 at PageID 1499). The Fourth Amendment provides that no warrants shall issue except on probable cause. U.S. Const. amend. IV. In determining whether an affidavit establishes probable cause, the issuing magistrate must decide whether, "given all the circumstances set forth in the affidavit," "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). "To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter,* 360 F.3d 591, 594 (6th Cir. 2004) (quotation omitted). In other words, there must be a "nexus between the place to be searched and the evidence sought." *United States v. Van Shutters,* 163 F.3d 331, 336-37 (6th Cir. 1998).

The Eleventh District assessed the search warrants and supporting affidavits and, citing Ohio Revised Code § 2933.23 and state caselaw, determined the materials were not facially defective and they particularly described the places to be searched and the items and data to be seized; or, in other words, Mr. Honzu's Fourth Amendment claim was meritless. (ECF #13-1 at PageID 266-28; *Honzu I,* 2023 WL 5202403, at *8-9). Indeed, in its review of the search warrant materials, the Eleventh District noted the affidavit set forth the facts of the crime, including the course of events leading to Mr. Honzu's arrest, the circumstances of his arrest, the items found during the inventory search of his vehicle, and his status as a sex offender. (ECF #13-1 at PageID 267). And the detective explained that it was likely the cell phone, located during the inventory search of Mr. Honzu's vehicle, would contain evidence of the crime of kidnapping, including

32

location information and data. (*Id.*). The Eleventh District's conclusion that Mr. Honzu's Fourth Amendment claim was meritless is reasonable, especially because nothing supports Mr. Honzu's assertion that the affidavit was based solely on the notion that "cell phones may contain evidence of a crime."

The state court's decision denying his ineffective-assistance-of-counsel claim because the underlying Fourth Amendment claim was meritless is a reasonable application of *Strickland,* under which the failure to raise a meritless claim does not constitute ineffective assistance of counsel. *Tackett v. Trierweiler,* 956 F.3d 358, 375 (6th Cir. 2020). Therefore, I recommend the District Court deny this subclaim as meritless.

### 2.    Ground Two

In Ground Two, Mr. Honzu asserts two subclaims. Relevant to Case No. 469, Mr. Honzu first contends appellate counsel erred by not challenging probable cause for the search of his cell phone on appeal. (ECF #1 at PageID 7). But the state-court record shows Mr. Honzu's appellate counsel did raise the issue on direct appeal. (ECF #13-1 at PageID 186-96). Moreover, as explained in the previous section, the Eleventh District reasonably concluded Mr. Honzu could not have prevailed on the issue.

When a petitioner raises a claim for ineffective assistance of appellate counsel, the habeas court must "assess the strength of the claim appellate counsel failed to raise." *Wilson v. Parker,* 515 F.3d 682, 709 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins,* 356 F.3d 688, 699 (6th Cir. 2004). And "[i]f there is a reasonable probability that [the defendant] would have prevailed on appeal had the claim

been raised, we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* at 700. In this case, the Eleventh District's reasonable determination that Mr. Honzu's Fourth Amendment claim would not have prevailed compels a finding here that there is no reasonable probability that inclusion of that issue would have changed the result of the appeal. I recommend the District Court deny this subclaim as meritless.

In the second subclaim of Ground Two, Mr. Honzu asserts appellate counsel's performance on direct appeal from Case No. 561 was constitutionally deficient because counsel did not argue the trial court violated his right to due process when it did not properly instruct the jury on "sexual motivation," an essential element of kidnapping. (ECF #1 at PageID 7). As a result, the jury did not receive "all elements of the crime to deliberate upon, so the crime was unproven." (*Id.*). In denying Mr. Honzu's application to reopen the direct appeals, the Eleventh District applied the *Strickland* standard and determined the following:

> Mr. Honzu asserts his appellate counsel was ineffective for failing to argue that the trial judge should have instructed the jury "on the essential element of the crime of kidnapping in this case, sexually motivated," which amounted to "plain error."
>
> Firstly, sexual motivation is not an essential element of the offense of kidnapping; rather, it is a specification pursuant to R.C. 2941.147 that a jury must separately find after it finds a defendant guilty of the underlying offense(s), which in this case was three counts of kidnapping.
>
> Secondly, a review of the record in this case reveals the trial court properly instructed the jury on "sexual motivation." The court explained that "[b]efore you can find the defendant committed the offense with a sexual motivation, you must find beyond a reasonable doubt that the defendant committed the offense with the purpose to gratify his sexual needs or desires."
>
> It is apparent the trial court gave an instruction that was "relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." Further, the

34

> instruction was a correct statement of law and applicable to the facts of the case, and reasonable minds might reach the conclusion sought by the requested instruction.
>
> Since we determined there was no error in the trial court's jury instruction, Mr. Honzu failed to demonstrate a genuine issue or raise a colorable claim as to the ineffectiveness of his appellate counsel.

(ECF #13-1 at PageID 399-400). I conclude Mr. Honzu is not entitled to relief under § 2254(d)(1) because he has not shown this decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

Begin with assessing the strength of the claim Mr. Honzu's counsel did not raise on direct appeal. *Wilson,* 515 F.3d at 709 (habeas courts reviewing claims of ineffective assistance of appellate counsel must assess the strength of the claim counsel did not raise). Relevant to the underlying jury-instruction claim, it is well-settled that the Fourteenth Amendment requires a state to prove every element of the offense charged beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364 (1970). And a jury instruction that relieves the state of that requirement violates due process. *Middleton v. McNeil,* 541 U.S. 433, 437 (2004) (citations omitted).

Based on the record, Mr. Honzu has not shown that the jury instructions relieved the state of its burden to prove every essential element of an offense or specification beyond a reasonable doubt. In this case, the state-court transcript confirms that for each count of kidnapping, the trial court identified the essential elements and explained that the jury must find each element beyond a reasonable doubt to convict him of those offenses. (ECF #13-3 at PageID 1457-65). The jury was also instructed that if it found Mr. Honzu guilty of a kidnapping offense, it must separately decide if he committed the kidnapping with a sexual motivation. (*Id.* at PageID 1460, 1462-64). The trial court then explained that before the jury could find Mr. Honzu committed the kidnapping with a sexual motivation, it "must find beyond a reasonable doubt that the defendant committed the

35

offense with purpose to gratify his own sexual needs or desires." (*Id.*). Under Ohio law, "sexual motivation" means "a purpose to gratify the sexual needs or desires of the offender." Ohio Revised Code § 2971.01(J). Thus, contrary to Mr. Honzu's contention, the jury was properly instructed on all essential elements of the offenses and specifications.

With that finding, I conclude no reasonable probability exists that appellate counsel's inclusion of the issue would have changed the result of the appeal in the state courts. *See McFarland*, 356 F.3d at 699. And because there is no reasonable probability that the result would be different had appellate counsel raised the issue, I find the Eleventh District's decision reasonably applied the *Strickland* standard. I thus recommend the District Court deny this subclaim as meritless.

### 3.    Ground Three

In Ground Three, Mr. Honzu argues there was insufficient evidence to sustain guilty verdicts for the attempted-kidnapping charges and attendant SM specifications in Case No 469. (ECF #1 at PageID 8). He disputes the state's theory that "going to a car wash and making ATM withdrawals" constitutes sexual motivation. (*Id.*; *see also* ECF #14 at PageID 1499) ("The State of Ohio in Honzu's case tries to make visiting three car washes in five hours while watching pornographic videos, all legal activities, as somehow being evidence of the crimes of attempted kidnapping with a sexual motivation").

The Due Process Clause of the Fourteenth Amendment requires a state to prove every fact necessary to constitute the charged offense beyond a reasonable doubt. *In re Winship*, 397 U.S. at 363-64. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established the standard for reviewing constitutional claims challenging the sufficiency of the evidence:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . This familiar standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Id.* at 319. Otherwise stated, a petitioner is entitled to federal habeas relief if, based on the record evidence at trial and in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Id.* at 324. Under the *Jackson* standard, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

On federal habeas review of claims challenging the sufficiency of the evidence, reviewing courts are bound by two layers of deference. The first layer, paying heed to the trier of fact, precludes the reviewing court from reweighing the evidence, reevaluating the credibility of witnesses, or otherwise substituting its opinion for that of the trier of fact. *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009) (citation omitted). Thus, even if the federal court might not agree with the trier of fact's decision to convict, the court must uphold the determination if *any* rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. *Id.*

Second, under AEDPA, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the State court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson,* 566 U.S. 650, 651 (2012) (citation omitted). In applying the *Jackson* standard, the federal court is bound by the substantive elements of the criminal offense as

defined by state law. *Jackson,* 443 U.S. at 324 n.16. And a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradford v. Richey,* 546 U.S. 74, 76 (2005).

The Eleventh District addressed this claim on direct appeal:

### Sufficiency of the Evidence

{¶22} In his first assignment of error, Mr. Honzu contends the trial court erred by overruling his Crim.R. 29 motion on counts one and three, kidnapping, since it convicted him of the lesser included offense of attempted kidnapping. He further argues the state failed to prove the merged count of attempted kidnapping by failing to introduce sufficient evidence that he attempted to restrain the liberty of the victim with the purpose to engage in sexual activity.

{¶23} "''[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" "In essence, sufficiency is a test of adequacy."

{¶24} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶25} When conducting a sufficiency of the evidence analysis, this court is to look at the actual evidence admitted at trial, both admissible and inadmissible. Further, a claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence.

### Lesser Included Offense of Attempted Kidnapping

{¶26} We must first address Mr. Honzu's argument that the trial court erred in overruling his Crim.R. 29 motion on counts one and three, kidnapping, because he was convicted of the lesser included offense of attempted kidnapping.

{¶27} A conviction of a lesser included offense does not equate to a determination that the trial court erred in failing to grant a Crim.R. 29 sufficiency motion as to that offense. There is no requirement that a trier of fact determine a defendant is not

guilty of an offense before considering a lesser included offense. The Tenth District rejected a similar argument in *State v. Turner*, 10th Dist. Franklin No. 97APA05-709, 1997 WL 798770 (Dec. 30, 1997), remarking that "an indictment on a greater offense necessarily and simultaneously charges a defendant with lesser included offenses as well." The court further explained that even if the trial court had granted the defendant's Crim.R. 29 motion, "a dismissal of the aggravated murder and attempted aggravated murder charges set forth in the indictment would not have mandated a dismissal and defendant's discharge from further prosecution. Rather, because defendant was acquitted of the aggravated murder and attempted aggravated murder charges, the issue on appeal is whether the trial court should have granted defendant's motion of acquittal with respect to the lesser included offenses of murder and attempted murder."

{¶28} Similarly, in *State v. Inch*, 6th Dist. Erie No. 92WD045, 1993 WL 93506 (Mar. 31, 1993), the Sixth District dismissed the appellant's arguments that since he was convicted of a lesser included offense, the trial court should have granted his motion for acquittal and dismissed the case in its entirety, or, in the alternative, that since the trial court did not grant his motion for acquittal on the original felony charge, it could not find him guilty on the lesser included offense. The court noted a jury did not have to unanimously determine a defendant "'is not guilty of a crime charged before it may consider a lesser included offense.'" *Id.* at *2, quoting *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph three of the syllabus. *See also State v. Schellentrager*, 8th Dist. Cuyahoga No. 105652, 2017-Ohio-9275, ¶ 11 (When an appellate court reviews a Crim.R. 29 motion, the motion should be reviewed in the context of whether the evidence supported the lesser included offenses of which the defendant was convicted).

{¶29} Thus, Mr. Honzu's contention is without merit, and we review his sufficiency of the evidence argument in relation to the lesser included offense of which he was convicted, i.e., attempted kidnapping.

{¶30} Pursuant to R.C. 2923.02(A), "attempt," "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶31} Pursuant to R.C. 2905.01(A)(4), "kidnapping," "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will."

{¶32} "Sexual activity" is defined as "sexual conduct or sexual contact, or both." R.C. 2907.01(C).

{¶33} "Sexual conduct" is defined as "vaginal intercourse between a male and a female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶34} "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**Restraint on Liberty**

{¶35} Mr. Honzu contends there was insufficient evidence that he attempted to restrain the victim.

{¶36} In *State v. Butcher*, 11th Dist. Portage No. 2011-P-0012, 2012-Ohio-868, this court explained:

{¶37} A person's liberty is restrained when the offender limits the victim's freedom of movement in any fashion for any period of time. Consequently, the element of restraint does not depend on 'the manner a victim is restrained. Rather, it depends on whether the * * * restraint is such as to place the victim in the offender's power and beyond immediate help, even though temporarily. * * * [Thus], the restraint involved need not be actual confinement, but may be merely compelling the victim to stay where [she] is.'

{¶38} The state introduced evidence through the victim's testimony, her police statement, photographs, and surveillance video that revealed Mr. Honzu approached the victim's driver's side door, threatened her with a knife, and told her to move over, blocking the door. When she escaped through the passenger door, Mr. Honzu grabbed her with enough force to rip her clothing. That is more than sufficient evidence from which a trier of fact could find, beyond a reasonable doubt, that Mr. Honzu attempted to compel the victim to stay in her vehicle.

{¶39} For example, in *Totarella*, the appellant challenged, in relevant part, his conviction for abduction, which included "restraining the liberty of another." We rejected the appellant's claim that the act of pulling the victim toward the backseat of her vehicle, if believed, did not constitute a restraint of her liberty, determining that "the element of restraining another's liberty may be proven by evidence that the defendant has 'limit[ed] one's freedom of movement in any fashion for any period of time.'"

{¶40} Mr. Honzu contends the Supreme Court of Ohio set forth a "significant restraint of movement standard" in *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31. That case, however, is inapplicable, and no such standard exists for the amount of restraint necessary to sustain a conviction for kidnapping or attempted kidnapping. The court in *Davis* was determining whether there was sufficient evidence of "significant restraint" to support a conviction for kidnapping separate from the restraint that was merely incidental to the killing itself. The court concluded there was sufficient evidence to support the appellant's conviction for kidnapping pursuant to R.C. 2905.01(A)(4), separate and apart from the murder, because there was evidence the victim was restrained for some period of time prior to the murder. *Id.* at ¶ 199-200. *See also State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992) (sufficient evidence to conclude the appellant, at gunpoint, moved and restrained the victim's liberty to a degree sufficient to uphold a kidnapping conviction in addition to his convictions for aggravated robbery and aggravated-murder specifications); *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 49 (affirming kidnapping conviction because there was sufficient evidence of restraint where the appellant bound the victims' hands for a period of time prior to the murder).

### For the Purpose of Sexual Activity

{¶41} Mr. Honzu also contends the state failed to introduce sufficient evidence he intended to restrain the liberty of the victim for the purpose of engaging in sexual activity.

{¶42} The Supreme Court of Ohio explained R.C. 2905.01(A)(4) prohibits the removal or restraint of another for the purpose of engaging in sexual activity with the person and "requires only that the restraint or removal occur for the purpose of non-consensual sexual activity—not that sexual activity actually take place."

{¶43} The state introduced data collected from Mr. Honzu's cell phone that showed bank credit card transactions for two other car washes on the same evening and that he had accessed pornography throughout those five hours, including in the minutes prior to the incident. We agree with the trial court "[t]his is strong circumstantial evidence of [Mr. Honzu's] motivation for his actions in this case" and "this shows a pattern of behavior and a plan of seeking out a victim and an opportunity." It is well settled "'circumstantial evidence and direct evidence inherently possess the same value.'"

{¶44} Thus, the state introduced sufficient evidence from which a trier of fact could find, beyond a reasonable doubt, that Mr. Honzu attempted to restrain the liberty of the victim for the purpose of engaging in sexual activity.

{¶45} Mr. Honzu's first assignment of error is without merit.

(ECF #13-1 at PageID 258-63; *Honzu I*, 2023 WL 5202403, at *4-7).

Upon review of the evidence presented and the applicable law, sufficient evidence of both "restraint of liberty" and "for the purpose of sexual activity" exists to uphold Mr. Honzu's convictions for attempted kidnapping. Under Ohio law, restraining an individual's liberty means "limiting or restraining their freedom of movement. The restraint need not be for any specific duration or in any specific manner." *State v. Williams*, 93 N.E.3d 449, 459 (Ohio Ct. App. 2017). At trial, the victim testified that when Mr. Honzu told her to move over, she moved to the passenger seat, opened the passenger door, and exited the car. (ECF #13-2 at PageID 753-54). When she opened the passenger door, Mr. Honzu grabbed her clothing, but the victim pulled herself free and ran. (*Id.* at PageID 754). After the bench trial, the trial court found Mr. Honzu guilty of two counts of attempted kidnapping, explaining:

> As [the victim] informed the police, "I jumped to the passenger side and kept on moving out the passenger side door. . . ." Although the Defendant grabbed at her clothing, he did not succeed in restraining her. The entire incident was so brief, and the evidence of physical restraint so slight, that the Court finds that the State has not proven the element of restraining the victim of her liberty beyond a reasonable doubt. Nevertheless, the Court finds that the Defendant's conduct, if successful, would have resulted in the offense of Kidnapping. On the two kidnapping counts, the Court finds that the State has proved the lesser included offenses of Attempted Kidnapping beyond a reasonable doubt.

(ECF #13-1 at PageID 111). After viewing the evidence in the light most favorable to the prosecution, as I must, I conclude a rational trier of fact could have concluded Mr. Honzu attempted to restrain the victim's liberty when he grabbed her clothes as she escaped him.

Mr. Honzu next argues that visiting three car washes in five hours while watching pornographic videos is not sufficient evidence to prove he attempted to restrain the victim for a

42

sexual purpose. (ECF #14 at PageID 1499). Under Ohio law, a defendant's purpose may be established by circumstantial evidence. *State v. Nicely*, 529 N.E.2d 1236, 1239 (1988). "The law has long recognized that intent, lying as it does within the privacy of a person's own thoughts, is not susceptible to objective proof." *State v. Garner*, 656 N.E.2d 623, 634 (1995). And therefore, intent may be established from the surrounding facts and circumstances in the case. *Id.* Mr. Honzu visited two other car washes within five hours of the incident. (ECF #13-2 at PageID 924). Within minutes of approaching the victim at the car wash, Mr. Honzu viewed pornography on his cell phone. (ECF #13-2 at PageID 928-29, 944).

Viewing pornography just before approaching the victim and attempting to restrain her is strong evidence from which to infer the sexual purpose of his actions. Considering the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Mr. Honzu attempted to restrain the victim's liberty for the purpose of engaging in sexual activity. As such, Mr. Honzu has failed to show the Eleventh District's decision is an unreasonable application of the *Jackson* standard. I thus recommend the District Court **DENY** Ground Three as meritless.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a COA and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas

43

petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not needed to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Honzu has not made a substantial showing that he was denied any federal constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are procedurally defaulted or meritorious constitutional claims. I thus recommend the District Court **DENY** Mr. Honzu a COA on all grounds.

### CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DISMISS** Ground One as it relates to Case No. 561, Ground Three as it relates to the sexual-motivation specification, and Ground Four as procedurally defaulted; **DISMISS** Ground One as it relates to Case No. 469, Ground Two, and Ground Three as it relates to the attempted-kidnapping convictions as without merit, and **DENY** the petition. I further recommend the District Court **DENY** Mr. Honzu a COA on all grounds.

Dated: January 15, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

44

<u>Objections, Review, and Appeal</u>

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).